. PARK HILL CO. v. HERRIOT et al.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. WILLS—CONSTRUCTION—CONCLUSIVENESS OF JUDGMENT.
    A complaint averred the making of a will, its date and terms, admission to probate, qualification of plaintiff and another as executor, death of other executor, deceased's residence and ownership of property in the county; that plaintiff continued to discharge the duties of executor and trustee under the will, selling realty under power of sale therein, and collecting income thereof; making land contract with defendant B., and the terms thereof; tender of performances, and refusal of defendant to accept because plaintiff had no power to sell; and asked for equitable relief. Defendant B. admitted the averments, and claimed the trust and power of sale were terminated by death of the other executor. The other defendants, the beneficiaries, submitted their rights to the court. The findings and judgment construed the will, upheld the power of sale, and directed specific performance. *Held*, the suit was one to construe the will, as well as for specific performance, and hence the construction given was binding on the parties.
2. SAME—NULLIFICATION OF JUDGMENT.
    The judgment is not nullified by a subsequent contrary determination by a superior court in a suit by the trustee against another purchaser.
3. SAME—PRIVITY OF ESTATE—ESTOPPEL.
    One purchasing other land of the trustee on the faith of the first judgment, and before the second, to which he was not a party, is protected, he standing in privity of estate to the judgment, and the beneficiaries being estopped to repudiate it.

Appeal from special term, Westchester county.

Suit by the Park Hill Company against Ann Matilda Herriot and others. There was a decree for defendants, and plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Herbert Parsons, for appellant.
Joseph Ullman, for respondents.

HATCH, J. The issues presented in this action are novel, difficult, and important. The facts are admitted, and the issues are solely of law. It appears that Warren Herriot died on the 6th day of April, 1882, leaving, him surviving, his widow, Louise Matilda Herriot, Ida Herriot, an infant child, and a defendant in this action, and two sisters. The testator left a will, in which he devised his property, real and personal, to his widow and Ann Matilda Herriot, a sister, as executors and trustees, to be by them distributed in accordance with its terms; and he vested in such trustees a power of sale of the real property, to be exercised at such time and in such manner and upon such terms as they should jointly consider beneficial to the estate. The will was made in June, 1878, and the prospective birth of a child, the present infant, born thereafter on August 10, 1879, led to the testator's making a codicil in March, 1879. The widow died in October, 1889, leaving the infant and two sisters surviving. After the death of the widow, and in March, 1890, the sister, assuming to act as the surviving trustee, entered into a written contract with one Barney for the sale of a certain portion of the real

property of the estate.    The trustee tendered a deed of such property in fulfillment of the contract, and Barney refused to accept the same, or to pay the purchase price, on the ground that the trustee, under the will and codicil, had no power to sell the land and convey a good title thereto.    Thereupon the trustee brought an action in the supreme court against Barney to obtain a construction of the will, and to compel the latter to complete his contract of purchase.    The present infant, and all other parties having an interest in the estate, were made parties to such action.    It was tried in the supreme court, and a judgment was therein rendered which determined that the surviving trustee had power under the will and codicil to make a valid sale and conveyance of the premises, and it decreed that Barney should complete his purchase in accordance with the terms of the contract.    The latter complied with the direction of the judgment, took title to the land, and entered into possession of the same.    No appeal was ever taken by any party from the judgment, and the same now stands in full force and virtue.    In February, 1893, the trustee, claiming to act under and by virtue of the terms of the trust, sold and conveyed to the plaintiff herein two certain other plots and parcels of land of the estate, and plaintiff entered into possession of the same. Subsequently the said trustee, still claiming to act under the power of sale, contracted to sell to one Prime a part of the real property, and, the latter refusing to complete his purchase, the trustee and Prime entered into a submission of a controversy upon facts admitted.    The question presented under such submission was whether the plaintiff, as surviving executor and trustee under the will of Warren Herriot, could convey a good title to lands of which said Herriot died seised.    The only persons parties to this action were the trustee and Prime.    The supreme court at general term held that the trust estate to which the power of sale was annexed terminated upon the death of the widow, and that the fee of the estate upon such death vested in the infant child, subject to be devested by the death of the latter before reaching the age of 21.    Herriot v. Prime, 33 N. Y. Supp. 970.    Upon appeal to the court of appeals it was held that the trust had terminated, and the judgment was affirmed on this ground.    Herriot v. Prime, 155 N. Y. 5, 49 N. E. 142.    The law for the will is therefore settled.    Although this conclusion is clear, having passed beyond debate, yet such fact by no means settles the rights of the present parties to this action.    Such question is confused, instead of being cleared, by these decisions.    After the decision in the court of appeals, this action was brought to compel a determination of the claim made by the infant to the real property conveyed by the trustee to the plaintiff.    The question, therefore, is, does the law of the will, as settled by the court of appeals, have retroactive application, and operate to devest rights vested under a former judgment declaring the rights of the trustee, and under which the parties have acted in good faith?

As claim is made that the first action was not one to construe the will, but alone to compel specific performance of the contract of sale, let us first consider the nature and character of that action.    The complaint first set out the making of the will and codicil, the date

upon which it was made, and its terms in full; then avers that the deceased was a resident of the county of Westchester, and was the owner of a large amount of real and personal property located therein; the birth of the infant, and that she is the defendant herein; that George Herriot, a legatee, had died, giving the date of his death; that the will was duly admitted to probate by the surrogate of the county of Westchester, and that the plaintiff and Sarah Matilda Herriot thereupon qualified as executors and trustees thereunder; that letters testamentary were duly issued to them, and that they took possession of the property, and entered upon the discharge of their duties; that on the 21st day of October, 1886, the said Sarah Louise Matilda Herriot died; that since such death the plaintiff has continued to discharge the duties of executor and trustee under the will, making sales of the real estate under the power of sale contained therein, and collecting the income thereof. The complaint then avers the making of the contract with Barney for the sale of a certain parcel of land, and the terms of such contract, the tender of performance of the same upon the part of the trustee, and the refusal on the part of Barney to accept a deed, based upon the ground that the plaintiff had no power, under the will and codicil, to make such sale, as it was required to be made by the two executors jointly, and not singly; and also that the power to make such sale had ceased to exist. The complaint prayed for judgment construing the will, and asked that it be determined that the plaintiff is possessed of such power of sale, and for such further relief as to the court may seem proper. The defendant Caroline E. Lowerre, the other sister, and the infant defendant, Ida Louise Herriot,—the latter through a guardian ad litem,—answered, submitting their respective rights and interests to the protection of the court. The defendant Barney admitted all of the allegations of the complaint, and further answered that the plaintiff, as executor and trustee, could not convey good title to the premises, for the reason that the trust was joint, and, one trustee having died, the other could not singly execute the power; that, as the trust had terminated, the power of sale terminated with it, and that the fee to the premises was vested in the infant defendant. It is quite evident that the issues raised by these pleadings required a construction of the will in order to determine the rights of the parties. Indeed, by the terms of the complaint the primary purpose was to obtain a construction of the will and the powers of the trustee thereunder. The prayer for judgment followed the averments of the complaint, and shows that the specific performance of the contract was made the incident to the determination of the proper construction of the power under the will. As the action necessarily involved the construction of trust powers, the court had jurisdiction to entertain the action, and construe the trust provisions (Dill v. Wisner, 88 N. Y. 153; Chipman v. Montgomery, 63 N. Y. 221), and such jurisdiction carried with it power to adjust the whole controversy (Wager v. Wager, 89 N. Y. 161). The findings of the court, after a trial of this issue, determine: First, the construction of the will; and, secondly, the validity of the contract, and that it be specifically performed. The judgment entered thereunder follows the findings, con-

strues the terms of the will, upholds the power of sale as existent in the surviving trustee, and directs specific performance of the contract. It is clearly evident, therefore, that this action is to be treated as one for the construction of the will as well as for the specific performance of the contract, and all the parties to such action were bound by its terms. Monarque v. Monarque, 80 N. Y. 320; Smith v. Secor, 157 N. Y. 402, 52 N. E. 179; Van Cortlandt v. Laidley, 59 Hun, 161, 11 N. Y. Supp. 148. So far as Barney is concerned, it is evident that he obtained good title to his land, as he was bound to comply with the judgment, and complete his purchase. It is said that the subsequent determination of the court of appeals nullified the effect of the first judgment. The bare statement of the claim is its refutation. Barney was compelled by the judgment to take title; and to say that he is now devested of title that he was coerced into taking by a judgment of a court of competent jurisdiction, because there has been another decision showing that this judgment proceeded upon erroneous principles, not only shocks the moral, but also the legal, sense. There is no rule, either of res adjudicata or stare decisis, that works such a result; and it seems that the defendant now admits that as to Barney and the property he took under the judgment such judgment is res adjudicata, and therefore binding upon all the world.

We come, therefore, to a consideration of what the effect of this judgment was, if any, upon third parties, who, in good faith, dealt with the trustee, and took title to property of the estate upon the strength of it, as that is the position of the present plaintiff. We believe it to be a general rule, undisputed by any authority, "that an allegation on record, upon which issue has been once taken and found, and a judgment has been rendered, is, between the parties taking it and their privies, conclusive, according to the finding thereof, so as to estop the parties, respectively, from again litigating that fact once so tried and found, whether it is pleaded in bar or given in evidence." Embury v. Conner, 3 N. Y. 511. See, also, Leavitt v. Wolcott, 95 N. Y. 212. It is conceded that the plaintiff was not a party to the judgment construing the will; consequently he does not stand in that attitude. But all of the persons in interest under the will were parties, and they were bound thereby. What was the binding force of that judgment? Among other things, it determined that the executor was vested with a power of sale, not alone of the lands involved in that action, but of the property which passed by the terms of the will; not alone to Barney, but to any other person who might purchase any part of the estate. It was the beneficiaries under the will who acquiesced in the decree thus entered, and they derived whatever benefit there was therefrom. They consented to its entry, and the judgment spoke for them in the same tone as it spoke for the trustee. A conveyance thereunder is to be taken as one made, in legal effect, by the beneficiaries, as well as by the trustee, for the judgment declared that the executor was possessed of the legal power to act for and on behalf of the beneficiaries, as their representative, and they acquiesced in this interpretation of the will. The plaintiff stands in

privity of estate to such judgment. It derived its title from the trustee litigant in the suit, and subsequent to the adjudicated rights therein. Freem. Judgm. § 162. Where a party succeeds to the adjudged interest of another, such party takes such interest as is adjudged. Van Fleet, Former Adj. § 586. While there may be some difficulty of application of this rule under particular conditions, yet the rule itself is elementary, and has been uniformly applied. Hughes v. Pipe Lines, 119 N. Y. 423, 23 N. E. 1042. No question has ever arisen, so far as our examination has extended, where the relation of grantor and grantee exists, of any qualification of such rule. Under such circumstances the grantee is always held to derive from his grantor such title as was conveyed if the grantor possessed the same; and the latter has always been held estopped from denying title. Campbell v. Hall, 16 N. Y. 575; Van Fleet, Former Adj. pp. 1077, 1080, § 538. It is therefore clear that the plaintiff, when it took its title, stood in privity to this judgment, and derived from such conveyance all the benefits which could be derived from a judgment interpreting the power exercised in making the conveyance. Did the subsequent determination of the court of appeals affect the title thus obtained? We think that it did not. The plaintiff was not a party to the submitted controversy, and could not, therefore, he bound by any determination had in that action. The relation of privity is not to be defeated or impaired by subsequent acts of the grantor (Chase v. Kaynor, 78 Iowa, 449, 43 N. W. 269), and a judgment rendered, to which he is not a party, is not evidence against him (Brower v. Bowers, 1 Abb. Dec. 214). While it is probably true that the adjudication in that case might be properly received in evidence to establish the law of the will, yet it cannot be held to operate as an adjudication binding upon the plaintiff to the extent of affecting its title. The judgment under which the plaintiff claims stands as a valid binding adjudication, unreversed to this day. Its effect was, as we have seen, to declare the existence of power to convey a good title to land, and under its binding force this title passed. A superior court subsequently says the reason for this judgment was wrong, but such court did not assume to sweep its foundations away, and it now stands a bulwark for acts done under it. In speaking of the effect of the last decision of the supreme court in the legal-tender cases, Judge Allen said:

"The reconsideration of the question by the supreme court of the United States, with a result adverse to its first judgment, did not affect the existing judgments of state courts, or call for a modification and change of their records to meet the changed views and judgment of that court. A contrary doctrine would lead to the absurd necessity of correcting and modifying all judgments, whether existing and in force, or satisfied and fully executed, upon the enunciation by a court of superior authority of a doctrine in conflict with, and legally subversive of, the principles upon which they were rendered. If judgments are erroneous, they can only be reviewed and reversed or modified by error or appeal in the mode prescribed by law." Miller v. Tyler, 58 N. Y. 477.

## Chancellor Kent wrote:

"If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness; and the community have a right

to regard it as a just declaration or exposition of the law, and to regulate their actions and contracts by it." Kent, Comm. 476.

This maxim was quoted and applied by the court of appeals in Harris v. Jex, 55 N. Y. 421, in making disposition of another question arising under the legal-tender decisions. These cases have pertinent application, and in principle are decisive of the present question. The subject has been otherwise examined, and the courts, in relation thereto, have spoken with no uncertain sound. Thus, in Allen v. Dundas, 3 Term R. 129, the court said:

"Every person is bound by the judicial acts of a court having competent authority, and during the existence of such judicial act the law will protect every person obeying it."

This language was approved in Lovett v. German Reformed Church, 12 Barb. 67, 83, and the court then adds:

"Indeed, unless the decree of a court of competent jurisdiction protects third persons, not parties to the suit, dealing with the successful party on the faith of the decree, no judgment can be of any avail until it shall have received the sanction of the highest tribunal in the land, or until the time for appealing shall have expired."

A question pretty close to the one now before us arose in Lindo v. Murray, 91 Hun, 335, 36 N. Y. Supp. 231. An action was brought for the construction of the will of Youngs, and the court determined that the attempted trusts were void, that the legal title vested in the heirs, but that the power of sale nevertheless existed. The executors conveyed to Murray, who made a contract to sell to the plaintiffs. The plaintiffs sued to recover back the money paid, claiming that the title was defective, in that the executors had no power to convey to Murray. The special term held that the judgment was conclusive upon that question, and bound all the parties thereto, and that, therefore, the title was good, and that plaintiffs could not recover. The general term did not question the decision of the special term, but held that the power of sale existed. The court of appeals affirmed the decision (157 N. Y. 697, 51 N. E. 1091) on the ground that the judgment construing the will was conclusive upon the parties. It is familiar doctrine that a stranger who purchases property at a judicial sale under a judgment or decree that is erroneous or voidable, but not absolutely void, will be protected in his purchase, even though the judgment be subsequently reversed. Rector v. Fitzgerald, 19 U. S. App. 423, 8 C. C. A. 277, and 59 Fed. 808; Gray v. Brignardello, 1 Wall. 627, 634. Where an executor under a will has no power of sale, but he applies to the court and obtains an order to sell, with the knowledge of the heirs, the latter will be estopped from questioning the title which the purchaser acquires thereby. Favill v. Roberts, 50 N. Y. 222. In Ohio it was held that a party who made private sales of land under a right established by a decree conveyed good title to a purchaser thereunder, which would not be affected by a subsequent reversal of the decree. Taylor's Lessee v. Boyd, 3 Ohio, 338; Wadhams v. Gay, 73 Ill. 415; Menges v. Dentler, 33 Pa. St. 495. The protection to the purchasers under the judgment should be upheld, in order that uncertainty may not attend upon the

faith to be given to decrees of a court of competent jurisdiction; otherwise, no purchaser would be safe in taking title. If any other rule be adopted, in order to get a clear and indisputable title the purchaser would be obliged to resist a judgment for specific performance, and appeal to the highest .court; otherwise, his title might be devested by a decision of the court of appeals, rendered after a long period of· time. In effect, this would not permit a judgment to confer upon a trustee authority to give a clear and indisputable title. It would limit the right so to do, dependent upon the subsequent action of a superior tribunal. Such a rule would create the doctrine that an ex post facto law could operate to devest a person of property obtained under a valid contract, and is not to be tolerated. It would involve the transactions of everyday occurrence in such doubt and perplexity that no person could feel safe in respect of any right derived from a decree of a court, unless such decree had the sanction of the court of last resort; and, as comparatively few decrees reach that tribunal, most titles would be quite insecure. The doctrine of stare decisis does not affect the present question. It rests upon an entirely different basis from the principles governing res adjudicata, and is in no sense to be applied in derogation of rights secured thereby. Moore v. City of Albany, 98 N. Y. 396, 410. This action was well brought. No point was made below that the complaint was not sufficient, or that no possession of the land was shown sufficient to maintain the action. If we were required to dispose of this case upon such question, we should hold the proof sufficient, and the complaint good, or, if not, permit it to be amended in this court. If follows from these· views that the judgment should be reversed, and a new trial granted.

Judgment reversed, and trial granted; costs to abide the event. All concur.